# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **OTC HOLDINGS CORPORATION,** *et al.,* | ) Case No. 10-12636 (BLS) |
| | ) |
| Debtors. | ) **Jointly Administered** |
| | ) Ref. Docket No. 12 |

**INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) AND 507 AND BANKRUPTCY RULES 2002, 4001 AND 9014 (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND 4001(c)**

Upon the motion, dated August 25, 2010 (the "Motion"), of Oriental Trading Company, Inc. (the "Borrower") and certain of its subsidiaries and affiliates, each as debtor and debtor-in-possession (collectively, the "Debtors")[1] in the above-captioned cases (the "Cases") commenced on August 25, 2010 (the "Petition Date") for interim and final orders under sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (this "Court") seeking:

    (I)      authorization for (a) the Borrower to obtain up to $40,000,000 of postpetition financing consisting of up to $33,500,000 of term loans (the "Term Loans")

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: OTC Holdings Corporation, a Delaware corporation (0174); Oriental Trading Company, Inc., a Delaware corporation (0180); OTC Investors Corporation, a Delaware corporation (5603); Fun Express, Inc., a Nebraska corporation (7942); and Oriental Trading Marketing, Inc., a Nebraska corporation (0923). The location of the Debtors' corporate headquarters and the service address for all the Debtors is 5455 South 90th Street, Omaha, Nebraska 68127.

509600-0296-11873-12047188

and up to $6,500,000 of revolving loans and letters of credit (such revolving extensions of credit, together with the Term Loans, the "DIP Loans") on the terms and conditions set forth in this interim order (this "Order") and the Credit and Guarantee Agreement (substantially in the form annexed to the Motion as Exhibit A, and as hereafter amended, supplemented or otherwise modified from time to time, the "DIP Agreement"; together with all agreements, documents and instruments executed and delivered in connection therewith, as hereafter amended, supplemented or otherwise modified from time to time, the "DIP Documents"), among the Borrower, the other Debtors as guarantors (the "Guarantors"), JPMorgan Chase Bank, N.A. ("JPMorgan"), as Administrative Agent (in such capacity, the "DIP Agent") for itself and a syndicate of lenders (collectively, the "DIP Lenders") comprised of certain of the First Lien Lenders (as defined in paragraph (V) below) and (b) the Guarantors to guaranty on a secured basis the Borrower's obligations in respect of the DIP Loans;

(II)    authorization for the Debtors to execute and deliver the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(III)    authorization to deem the approximately $1.9 million of outstanding letters of credit (the "Prepetition L/Cs") issued under the First Lien Credit Agreement (as defined in paragraph (V) below) to have been issued under the DIP Agreement;

(IV)    authorization for the Debtors to use proceeds of the initial borrowing under the DIP Agreement to pay in full the $2.5 million aggregate principal amount of first priority term loans (the "LIFO Loans"), plus any accrued and unpaid interest thereon, made on August 23, 2010 by certain of the First Lien Lenders (including the

Collateral Agent for such lenders, the "LIFO Lenders") pursuant to the First Lien Credit Agreement in order to address the Debtors' immediate liquidity needs pending obtaining the DIP Loans;

(V)    authorization for the Debtors to (a) use the Cash Collateral (as defined in paragraph 14 below) pursuant to section 363 of the Bankruptcy Code, and all other Prepetition Collateral (as defined in paragraph 4(d) below), and (b) provide adequate protection to (i) the lenders (including their affiliates which entered into secured hedge agreements with the Debtors, collectively, the "First Lien Lenders") under the First Lien Credit Agreement dated as of July 31, 2006 among the Borrower, the First Lien Lenders and JPMorgan, as administrative agent and collateral agent (in such capacity, the "First Lien Agent") for the First Lien Lenders (as amended, supplemented or otherwise modified, the "First Lien Credit Agreement"; and together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, including without limitation, the Intercreditor Agreement (as defined in paragraph 4(h) below), each as amended, supplemented or otherwise modified, the "First Lien Documents") and; (ii) the lenders (collectively, the "Second Lien Lenders") under the Second Lien Credit Agreement dated as of July 31, 2006 among the Borrower, the Second Lien Lenders and Wilmington Trust, FSB, as successor to Wachovia Bank, National Association, as administrative agent and collateral agent (in such capacity, the "Second Lien Agent") for the Second Lien Lenders (as amended, supplemented or otherwise modified, the "Second Lien Credit Agreement"; and together with all security, pledge and guaranty agreements and all other documentation executed in connection with

509600-0296-11873-12047188

the foregoing, including without limitation, the Intercreditor Agreement, each as amended, supplemented or otherwise modified, the "Second Lien Documents");

(VI)     authorization for the DIP Agent to exercise remedies under the DIP Documents upon the occurrence and during the continuance of an Event of Default (as defined in the DIP Agreement);

(VII)   subject to entry of the Final Order (as defined in paragraph (X) below), authorization to grant liens to the DIP Lenders on the proceeds of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under Sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions");

(VIII)  subject to entry of the Final Order, the waiver by the Debtors of any right to seek to surcharge against the DIP Collateral (as defined in paragraph 8 below) or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code;

(IX)     to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of this Order (a) authorizing the Borrower, on an interim basis, to borrow under the DIP Agreement up to $22,500,000 of DIP Loans (including letters of credit) to be used for working capital and general corporate purposes of the Debtors (including costs related to the Cases) and to repay in full the LIFO Obligations (as defined in paragraph 4(a) below), (b) authorizing the Debtors to use the Cash Collateral and the other Prepetition Collateral, and (c) granting adequate protection to the First Lien Lenders and the Second Lien Lenders; and

509600-0296-11873-12047188

(X)     to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing and approving on a final basis the relief requested in the Motion, including without limitation, for the Borrower to borrow the balance of the DIP Loans, for the Debtors to continue to use the Cash Collateral and the other Prepetition Collateral and for the Debtors to grant adequate protection to the First Lien Lenders and the Second Lien Lenders.

The Interim Hearing having been held by this Court on August 26, 2010, and upon the record made by the Debtors at the Interim Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Jurisdiction.* This Court has core jurisdiction over the Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      *Notice.* Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors on (i) their thirty largest (on a consolidated basis) unsecured creditors, (ii) the DIP Agent, (iii) the First Lien Agent, (iv) the Second Lien Agent and (v) the United States Trustee for the District of Delaware (the "U.S. Trustee"). Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c), and no further notice of the relief sought at the Interim Hearing is necessary or required.

3.      *Approval of Motion.* The relief requested in the Motion is granted as described herein. Except as otherwise expressly provided in this Order, any objection to the entry of this

Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled on the merits.

4.    *Debtors' Stipulations.* Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 21 and 22), the Debtors admit, stipulate, and agree that:

(a)    as of the Petition Date, the Debtors were truly and justly indebted and liable to the LIFO Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of $2.5 million in respect of the first priority term loans made on August 23, 2010 by the LIFO Lenders pursuant to the First Lien Documents in order to address the Debtors' immediate liquidity needs pending obtaining the DIP Loans, plus accrued and unpaid interest thereon and any fees and expenses (including fees and expenses of attorneys) related thereto as provided in the First Lien Documents (collectively, the "LIFO Obligations");

(b)    the liens and security interests granted to secure the LIFO Obligations are (i) valid, binding, perfected, enforceable, first priority (subject to permitted exceptions under the First Lien Credit Agreement) liens on and security interests in Prepetition Collateral (as defined in paragraph 4(d) below), (ii) not subject to avoidance recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to other valid and unavoidable liens perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) which are permitted under the First Lien Documents to the extent such permitted liens are senior to the liens securing the LIFO Obligations;

(c)    as of the Petition Date, the Debtors were truly and justly indebted to the First Lien Lenders, without defense, counterclaim or offset (other than any setoff rights under

any hedge agreements in accordance with their terms) of any kind, in the aggregate principal amount of not less than $403,000,000 in respect of loans made, letters of credit issued, and interest rate hedges provided, by the First Lien Lenders pursuant to the First Lien Documents, plus accrued and unpaid interest thereon, any cash management obligations owed to any First Lien Lender and consent and other fees and expenses (including fees and expenses of attorneys and advisors) as provided in the First Lien Documents (collectively, the "First Lien Obligations");

(d)     the liens and security interests granted by the Debtors to the First Lien Agent (for the ratable benefit of the First Lien Lenders) to secure the First Lien Obligations are (i) valid, binding, perfected, enforceable, first priority (subject to permitted exceptions under the First Lien Credit Agreement) liens on and security interests in the personal and real property of such Debtors constituting "Collateral" under, and as defined in, the First Lien Credit Agreement (together with the Cash Collateral, the "Prepetition Collateral"), (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (A) after giving effect to this Order, the Carve-Out (as defined in paragraph 7(b) below) and the liens and security interests granted to secure the DIP Loans and the First Lien Adequate Protection Obligations (as defined in paragraph 16 below), (B) prior to repayment in full of the LIFO Obligations, the liens securing the LIFO Obligations and (C) other valid and unavoidable liens perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) which are permitted under the First Lien Documents to the extent such permitted liens are senior to the liens securing the First Lien Obligations;

509600-0296-11873-12047188

(e)     as of the Petition Date, the Debtors were truly and justly indebted to the Second Lien Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $180,000,000 in respect of loans made by the Second Lien Lenders pursuant to the Second Lien Documents, plus accrued and unpaid interest thereon and fees and expenses (including fees and expenses of attorneys and advisors) as provided in the Second Lien Documents (collectively, the "Second Lien Obligations");

(f)     the liens and security interests granted to the Second Lien Agent (for the ratable benefit of the Second Lien Lenders) to secure the Second Lien Obligations are (i) valid, binding, perfected, enforceable, second priority (subject to permitted exceptions under the Second Lien Credit Agreement) liens on and security interests in Prepetition Collateral, (ii) not subject to avoidance, recharacterization or subordination (except as set forth in the Intercreditor Agreement) pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (iii) subject and subordinate only to (A) after giving effect to this Order, the Carve-Out and the liens and security interests granted to secure the DIP Loans and the Adequate Protection Obligations (as defined in paragraph 18 below), (B) prior to repayment in full of the LIFO Obligations, liens securing the LIFO Obligations, (C) liens securing the First Lien Obligations and (D) other valid and unavoidable liens perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) which are permitted under the Second Lien Documents to the extent such permitted liens are senior to the liens securing the Second Lien Obligations;

(g)     (i) no portion of the LIFO Obligations, the First Lien Obligations, or except as set forth in the Intercreditor Agreement, the Second Lien Obligations shall be subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or

8

applicable nonbankruptcy law and (ii) the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights (other than any setoff rights under any hedge agreements in accordance with their terms), whether arising under the Bankruptcy Code or applicable nonbankruptcy law, against the LIFO Lenders, the First Lien Agent, the First Lien Lenders, the Second Lien Agent, the Second Lien Lenders, and as to each of the foregoing, their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors, in each case in connection with any matter related to the LIFO Obligations, the First Lien Obligations, the First Lien Credit Agreement, the First Lien Documents or the financing and transactions contemplated thereby, the Second Lien Obligations, the Second Lien Credit Agreement, the Second Lien Documents or the financing and transactions contemplated thereby, or the Prepetition Collateral.

(h)     In connection with the execution and delivery of the First Lien Documents and the Second Lien Documents, the First Lien Agent and the Second Lien Agent entered into that certain Intercreditor Agreement dated as of July 31, 2006 by and among JPMorgan, as collateral agent for the First Priority Secured Parties (as defined in the Intercreditor Agreement), Wilmington Trust, FSB, as successor collateral agent for the Second Priority Secured Parties (as defined in the Intercreditor Agreement), Oriental Trading Company, Inc., as Borrower and certain Loan Parties (as defined in the Intercreditor Agreement) party thereto (the "Intercreditor Agreement"), to set forth the relative lien priorities and other rights and remedies of the First Lien Lenders and the Second Lien Lenders with respect to, among other things, the Prepetition Collateral.  Pursuant and subject to the Intercreditor Agreement, the Second Lien Agent and the Second Lien Lenders have agreed that (i) they will be deemed to have consented and raise no objection to the use of the Cash Collateral on the terms provided herein; (ii) they will not request

9

or accept adequate protection other than as set forth herein; (iii) they shall not object, contest, or support any other person objecting to or contesting, any request by the First Lien Lenders for adequate protection or any adequate protection provided to the First Lien Lenders; and (iv) they will subordinate their liens on the Prepetition Collateral to the DIP Liens (as defined in paragraph 8 below) and Adequate Protection Liens (as defined in paragraph 18(a) below) as contemplated herein.

        (i)     The aggregate value of the Prepetition Collateral securing the LIFO Obligations substantially exceeds the aggregate amount of the LIFO Obligations.

     5.    *Findings Regarding the DIP Loans.*

        (a)     Good cause has been shown for the entry of this Order.

        (b)     The Debtors have an immediate need to obtain the DIP Loans and to use the Prepetition Collateral, including the Cash Collateral, in order to, among other things, permit the orderly continuation of their businesses, preserve the going concern value of the Debtors, make payroll and satisfy other working capital and general corporate purposes of the Debtors (including costs related to the Cases) and repay in full the LIFO Obligations. Repayment in full of the LIFO Obligations with the initial proceeds of the DIP Loans is appropriate because (i) the aggregate value of the Prepetition Collateral securing the LIFO Obligations substantially exceeds the aggregate amount of the LIFO Obligations, (ii) the applicable interest rate with respect to the LIFO Loans is greater than the applicable interest rate with respect to the DIP Loans, (iii) the LIFO Lenders provided the LIFO Loans to the Debtors two (2) days before the Petition Date as an accommodation to provide the Debtors with sufficient liquidity pending obtaining the DIP Loans to permit the Debtors to enter chapter 11 in as smooth and orderly a fashion as possible under the circumstances, and (iv) it is a condition to closing under the DIP Agreement that the

initial proceeds of the DIP Loans be used to repay in full the LIFO Obligations. In addition, the treatment of the Prepetition L/Cs as letters of credit issued under the DIP Agreement is appropriate to, among other things, provide for administrative convenience in respect of the issuance and any amendment of such outstanding letters of credit.

(c)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without granting priming liens under section 364(d)(1) of the Bankruptcy Code and the Superpriority Claims (as defined in paragraph 7(a) below) and repaying in full the LIFO Obligations, in each case on the terms and conditions set forth in this Order and the DIP Documents.

(d)     The terms of the DIP Loans and the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Documents and the use of the Prepetition Collateral (including the Cash Collateral) have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the DIP Agent, the DIP Lenders, the First Lien Agent and the First Lien Lenders, and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Documents, this Order and the DIP Loans (collectively, the "DIP Obligations") shall be deemed to have been extended by the DIP Agent and the DIP Lenders in

11

"good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

(f)     The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the interim relief set forth in this Order, the Debtors' estates and their business operations will be immediately and irreparably harmed.  In particular, because August through October is the Debtors' peak period for receiving shipments of goods that will be sold during the holiday shopping season, absent the availability of the DIP Loans during the next six to eight weeks, the Debtors will not be able to meet inventory needs and will suffer sales losses during the peak holiday shopping season.  The borrowing of the DIP Loans and the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Order and the DIP Documents are, therefore, in the best interest of the Debtors' estates.

6.     *Authorization of the DIP Loans and the DIP Documents.*

(a)     The Debtors are hereby authorized to enter into and perform under the DIP Documents and, in the case of the Borrower, to borrow under the DIP Agreement pending entry of the Final Order up to an aggregate principal amount of $22,500,000 of the DIP Loans (including letters of credit) for working capital and other general corporate purposes of the Debtors (including costs related to the Cases), including without limitation, to pay interest, fees and expenses in connection with the DIP Loans and the First Lien Adequate Protection Obligations and to repay in full the LIFO Obligations.

(b)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts and to execute and deliver all instruments and documents that the DIP Agent determines to be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents, including without limitation:

(i)     the execution, delivery and performance of the DIP Documents;

(ii)     the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in accordance with the terms of the DIP Documents and in such form as the Debtors, the DIP Agent and the DIP Lenders may agree, and no further approval of this Court shall be required for any amendment, waiver, consent or other modification to and under the DIP Documents (and any fees paid in connection therewith) that do not materially and adversely affect the Debtors or which do not (A) shorten the maturity of the DIP Loans, (B) increase the principal amount of, or the rate of interest payable on, the DIP Loans, or (C) change any Event of Default, add any covenants or amend the covenants therein, in any such case to be materially more restrictive; provided, however, that a copy of any such amendment, waiver, consent or other modification shall be filed by the Debtors with this Court and served by the Debtors on the U.S. Trustee and counsel to the statutory committee of unsecured creditors appointed in the Cases (the "Committee");

(iii)     the non-refundable payment to the DIP Agent and the DIP Lenders, as the case may be, of the commitment, underwriting, arranger and

administrative agency fees set forth in the DIP Documents as described in the Motion and referred to in one or more fee letters executed among the Debtors and the DIP Agent; and

(iv)     the performance of all other acts required under or in connection with the DIP Documents.

(c)     Upon the execution thereof, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Order and the DIP Documents.  No obligation, payment, transfer or grant of security by the Debtors under the DIP Documents or this Order shall be voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7.     *Superpriority Claims.*

(a)     Except to the extent expressly set forth in this Order in respect of the Carve-Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims (the "Superpriority Claims") against the Debtors with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b),

726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.

(b)　　For purposes hereof, the "Carve-Out" shall mean (a) any fees payable to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to section 1930(a) of title 28 of the United States Code and (b) up to $1,000,000 of allowed fees, expenses and disbursements of professionals retained by order of this Court, incurred after the occurrence of a Carve-Out Event (defined in this paragraph 7(b) below) plus all unpaid professional fees, expenses and disbursements allowed by this Court that were incurred in compliance with the Budget (as defined in, and including any permitted variance and amendment thereof pursuant to, the DIP Agreement) prior to the occurrence of a Carve-Out Event (regardless of when such fees, expenses and disbursements become allowed by order of this Court). For the purposes hereof, a "Carve-Out Event" shall occur upon the occurrence and during the continuance of an Event of Default under the DIP Agreement or a material breach by the Debtors of this Order and, in each case, upon delivery of a written notice thereof by the DIP Agent or the Required Lenders (as defined in the DIP Agreement, the "Required DIP Lenders") to the Debtors (a "Carve-Out Notice"). So long as no Carve-Out Event shall have occurred and be continuing, the Carve-Out shall not be reduced by the payment of fees, expenses and disbursements of professionals retained by order of this Court allowed by this Court and payable under Sections 328, 330 and 331 of the Bankruptcy Code, which allowed fees, expenses and disbursements shall be paid in accordance with and subject to the Budget, and the Carve-Out shall not be reduced by the application of any pre-petition retainers by any such professionals. Upon the delivery of a Carve-Out Notice, the right of the Debtors to pay professional fees incurred under clause (b) above without reduction of the Carve-Out in clause (b) above shall terminate and upon receipt of

15

such notice, the Debtors shall provide immediate notice by facsimile and email to all retained professionals informing them that a Carve-Out Event has occurred and that the Debtors' ability to pay professionals is subject to the Carve-Out; provided that (A) the Carve-Out shall not be available to pay any professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Agent, the DIP Lenders, the LIFO Lenders, the First Lien Lenders, the First Lien Agent, the Second Lien Lenders or the Second Lien Agent and (B) nothing in this Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates.

8.     *DIP Liens.* As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent of any property, the following security interests and liens are hereby granted by the Debtors to the DIP Agent, for itself and the benefit of the DIP Lenders (all property of the Debtors identified in clauses (a), (b) and (c) below being collectively referred to as the "DIP Collateral"), subject and subordinate only to the Carve-Out (all such liens and security interests granted to the DIP Agent pursuant to this Order, the "DIP Liens"):

(a)     First Lien on Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all tangible and intangible prepetition and postpetition property of the Debtors, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to either (i) valid, perfected, non-avoidable and enforceable liens in existence on or as of the

16

Petition Date, or (ii) a valid lien perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "Unencumbered Property"); provided, that the Unencumbered Property shall not include the Avoidance Actions, but subject to entry of the Final Order, Unencumbered Property shall include any proceeds or property recovered in respect of any Avoidance Actions.

(b)     Liens Junior to Certain Existing Liens. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible prepetition and postpetition property of the Debtors (other than the property described in paragraph 8(c) below, as to which the DIP Liens will have the priority as described in such clause), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "Non-Primed Liens"), which security interests and liens in favor of the DIP Agent and the DIP Lenders shall be junior to the Non-Primed Liens.

(c)     Liens Priming First Lien Lenders' and Second Lien Lenders' Liens. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien on, and security interest in, all Prepetition Collateral (whether now existing or hereafter acquired). The DIP Liens on the Prepetition Collateral shall be senior in all respects to the security interests in, and liens on, the Prepetition Collateral of (i) the First Lien Agent and the First Lien Lenders (including, without limitation, the First Lien Adequate Protection Liens) and (ii) the Second Lien Agent and the Second Lien Lenders (including, without limitation, the Second Lien Adequate Protection Liens (as defined in

17

paragraph 18(a) below), but shall be junior to any Non-Primed Liens on the Prepetition Collateral.

(d)     Liens Senior to Certain Other Liens.  The DIP Liens and the Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date or (ii) except as set forth in the Intercreditor Agreement, subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

9.     *Remedies After Event of Default.*  The automatic stay under section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, (a) immediately upon the occurrence and during the continuance of an Event of Default, all rights and remedies under the DIP Documents, other than those rights and remedies against the DIP Collateral as provided in clause (b) below, and (b) upon the occurrence and during the continuance of an Event of Default, and the giving of five (5) business days' prior written notice to the Debtors (with a copy to counsel to the Debtors, counsel to the Committee and the U.S. Trustee), all rights and remedies against the DIP Collateral provided for in the DIP Documents and this Order (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the DIP Agent or any DIP Lender).  In no event shall the DIP Agent, the DIP Lenders, the First Lien Agent, the First Lien Lenders, the Second Lien Agent or the Second Lien Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.  The DIP Agent's or any DIP Lender's delay or failure to exercise rights and remedies under the DIP Documents or this Order shall not constitute a waiver of the DIP Agent's or any DIP Lender's rights hereunder, thereunder or

18

otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Agreement.

10. *Limitation on Charging Expenses Against Collateral*. Subject to and effective upon entry of the Final Order, except to the extent of the Carve-Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or the Prepetition Collateral, as the case may be, pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent (acting with the consent of the Required DIP Lenders), the First Lien Agent (acting with the consent of the Required Lenders (as defined in the First Lien Credit Agreement, the "Required First Lien Lenders")) and the Second Lien Agent, as the case may be, and no such consent shall be implied from any other action or inaction by the DIP Agent, the DIP Lenders, the First Lien Agent, the First Lien Lenders, the Second Lien Agent, or the Second Lien Lenders.

11. *Limitations under Section 552(b) of the Bankruptcy Code*. The First Lien Agent, the First Lien Lenders, the Second Lien Agent and the Second Lien Lenders shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to and effective upon entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the First Lien Agent, First Lien Lenders, the Second Lien Agent and the Second Lien Lenders with respect to (i) proceeds, products, offspring or profits of any of the Prepetition Collateral or (ii) the extension of the Adequate Protection Liens to cover proceeds of the Prepetition Collateral.

12.     *Payments Free and Clear.*  Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders or (except as provided in paragraph 21 of this Order) to the First Lien Agent on behalf of the First Lien Lenders or the LIFO Lenders pursuant to the provisions of this Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability.

13.     *LIFO Loans.*  The LIFO Obligations shall be paid in full by the Debtors from the proceeds of the initial borrowing of the DIP Loans and, upon such payment, all security interests in, and liens on, Prepetition Collateral granted to secure the LIFO Obligations shall be immediately, and without the necessity of further action, released and terminated.

14.     *The Cash Collateral.*  Substantially all of the Debtors' cash, including without limitation, all cash and other amounts on deposit or maintained by the Debtors in any account or accounts with any First Lien Lender and any cash proceeds of the disposition of any Prepetition Collateral, constitute proceeds of the Prepetition Collateral and, therefore, are cash collateral of the LIFO Lenders, the First Lien Lenders and, subject to the Intercreditor Agreement, the Second Lien Lenders within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

15.     *Use of Prepetition Collateral (Including Cash Collateral).*  The Debtors are hereby authorized to use the Prepetition Collateral, including the Cash Collateral, during the period from the Petition Date through and including the Termination Date (as defined in the DIP Agreement) for working capital and general corporate purposes (including costs related to the Cases) in accordance with the terms and conditions of this Order and the Budget; provided that, (a) the First Lien Lenders and the Second Lien Lenders are granted adequate protection as hereinafter set forth and (b) except on the terms of this Order, the Debtors shall be enjoined and

prohibited from at any time using the Cash Collateral. By virtue of the First Lien Lenders'

consent to the Debtors' use of Cash Collateral as set forth in this Order, pursuant and subject to

the Intercreditor Agreement, the Second Lien Lenders are deemed to have consented to such use

of the Cash Collateral.

16.     *Adequate Protection for the First Lien Agent and First Lien Lenders.*  The First

Lien Agent and the First Lien Lenders are entitled, pursuant to sections 361, 363(c)(2), 363(e)

and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition

Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value

of their interests in the Prepetition Collateral, including without limitation, any such diminution

resulting from the sale, lease or use by the Debtors (or other decline in value) of the Cash

Collateral and any other Prepetition Collateral, the priming of the First Lien Agent's liens on the

Prepetition Collateral by the DIP Liens and the imposition of the automatic stay pursuant to

section 362 of the Bankruptcy Code (such diminution in value, the "First Lien Adequate

Protection Obligations").  As adequate protection, the First Lien Agent and the First Lien

Lenders are hereby granted the following:

(a)     First Lien Adequate Protection Liens.  As security for the payment of the

First Lien Adequate Protection Obligations, the First Lien Agent (for itself and for the benefit of

the First Lien Lenders) is hereby granted (effective and perfected upon the date of this Order and

without the necessity of the execution by the Debtors of security agreements, pledge agreements,

mortgages, financing statements or other agreements) a valid, perfected replacement security

interest in and lien on all of the DIP Collateral (the "First Lien Adequate Protection Liens"),

subject and subordinate only to (i) the DIP Liens, (ii) the Carve-Out and (iii) the Non-Primed

Liens.

509600-0296-11873-12047188

(b)     <u>First Lien Section 507(b) Claims</u>.  The First Lien Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "<u>First Lien 507(b) Claims</u>"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, subject and subordinate only to (i) the Carve-Out and (ii) the Superpriority Claims granted in respect of the DIP Obligations.  Except to the extent expressly set forth in this Order, the First Lien Agent and the First Lien Lenders shall not receive or retain any payments, property or other amounts in respect of the First Lien 507(b) Claims unless and until all DIP Obligations shall have indefeasibly been paid in full in cash.  Notwithstanding their status as First Lien 507(b) Claims, the First Lien Adequate Protection Obligations may be satisfied in a plan of reorganization confirmed in the Cases in the manner set forth in such plan if holders of more than 66% (by amount) of the First Lien Adequate Protection Obligations consent to such treatment.

(c)     <u>Interest, Fees and Expenses</u>.  The Debtors are authorized and directed to (a) immediately pay as adequate protection to the First Lien Agent an amount equal to all accrued and unpaid interest on the loans constituting First Lien Obligations at the non-default LIBOR rate under the First Lien Credit Agreement, all regularly scheduled payments under any hedge agreements, all accrued and unpaid letter of credit fees and all other accrued and unpaid fees and disbursements owing to the First Lien Agent under the First Lien Documents and accrued prior to the Petition Date and (b) on the last business day of each calendar month after the entry of this Order, pay as adequate protection an amount equal to all accrued and unpaid interest on the loans constituting First Lien Obligations at the applicable non-default LIBOR rate

509600-0296-11873-12047188

set forth in the First Lien Documents (which payments and pricing shall be without prejudice to the rights of the First Lien Agent and any First Lien Lenders to assert a claim for the payment of additional interest calculated at any other rates applicable pursuant to the First Lien Credit Agreement, and without prejudice to the rights of the Debtors or other party in interest to contest any such additional claims) and all regularly scheduled payments under any hedge agreements, in each case subject to Section 506(b) of the Bankruptcy Code. As additional adequate protection, the Debtors shall also pay to the First Lien Agent (i) all reasonable fees and expenses payable to the First Lien Agent under the First Lien Documents, including without limitation, the reasonable fees and disbursements of counsel and financial advisors to the First Lien Agent and (ii) the reasonable expenses of members of the Steering Committee of First Lien Lenders (including, without limitation, the reasonable fees and expenses of counsel). None of the fees and expenses payable pursuant to this paragraph 16(c) shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. The Debtors shall pay the fees and expenses provided for in this paragraph 16(c) promptly after receipt of invoices therefor, and the Debtors shall promptly provide copies of such invoices to the counsel to the Committee and to the U.S. Trustee.

(d) <u>Information</u>. The Debtors shall promptly provide to the First Lien Agent any written financial information or periodic reporting that is provided to, or required to be provided to, the DIP Agent or the DIP Lenders.

(e) <u>Credit Bidding</u>. Subject to and effective upon entry of the Final Order, as additional adequate protection, the First Lien Agent (on behalf of the First Lien Lenders) shall, acting at the direction of the Required First Lien Lenders, have the right to "credit bid" the

23

amount of the First Lien Obligations in connection with any sale of the Prepetition Collateral, including without limitation, any sale pursuant to section 363 of the Bankruptcy Code or included as part of any plan of reorganization subject to confirmation under section 1129(b) of the Bankruptcy Code.

17. *Reservation of Rights of First Lien Lenders.* The First Lien Lenders consent to the adequate protection provided herein. Notwithstanding any other provision hereof, the grant of adequate protection to the First Lien Agent and the First Lien Lenders pursuant hereto is without prejudice to the right of the First Lien Agent, with the consent of the Required First Lien Lenders, to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest (subject, in the case of the Second Lien Agent and the Second Lien Lenders, to the Intercreditor Agreement) to contest any such modification. Except as expressly provided herein, nothing contained in this Order (including without limitation, the authorization to use the Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the First Lien Agent or any First Lien Lender. The consent of the First Lien Agent and the First Lien Lenders to the priming of the First Lien Agent's liens on the Prepetition Collateral by the DIP Liens and the Carve-Out (a) is limited to the DIP Loans and the Carve-Out and (b) does not constitute, and shall not be construed as constituting, an acknowledgement or stipulation by the First Lien Agent or the First Lien Lenders that, absent such consent, their interests in the Prepetition Collateral would be adequately protected pursuant to this Order.

18. *Adequate Protection for the Second Lien Agent and Second Lien Lenders.* The Second Lien Agent and the Second Lien Lenders are entitled, pursuant to sections 361,

24

363(c)(2), 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of their interests in the Prepetition Collateral, including without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the Cash Collateral and any other Prepetition Collateral, the priming of the Second Lien Agent's liens on the Prepetition Collateral by the DIP Liens and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "Second Lien Adequate Protection Obligations", together with the First Lien Adequate Protection Obligations, the "Adequate Protection Obligations").  As adequate protection, the Second Lien Agent and the Second Lien Lenders are hereby granted the following:

(a)     Second Lien Adequate Protection Liens. As security for the payment of the Second Lien Adequate Protection Obligations, the Second Lien Agent (for itself and for the benefit of the Second Lien Lenders) is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the DIP Collateral (the "Second Lien Adequate Protection Liens", together with the First Lien Adequate Protection Liens, the "Adequate Protection Liens"), subject and subordinate only to (i) the DIP Liens, (ii) the Carve-Out, (iii) the First Lien Adequate Protection Liens, (iv) the liens securing the First Lien Obligations and (v) the Non-Primed Liens.

(b)     Second Lien 507(b) Claims. The Second Lien Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "Second Lien 507(b) Claims", together with the First Lien 507(b) Claims, the "507(b)

Claims"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, subject and subordinate only to (i) the Carve-Out, (ii) the Superpriority Claims granted in respect of the DIP Obligations and (iii) the First Lien 507(b) Claims. The Second Lien Agent and the Second Lien Lenders shall not receive or retain any payments, property or other amounts in respect of the Second Lien 507(b) Claims unless and until all DIP Obligations, the First Lien Adequate Protection Obligations and the First Lien Obligations shall have indefeasibly been paid in full in cash. In addition to, and notwithstanding anything to the contrary contained in this Order, any Second Lien Adequate Protection Obligations may be satisfied in a plan of reorganization confirmed in the Cases in the manner set forth in the Intercreditor Agreement.

19. *Perfection of DIP Liens and Adequate Protection Liens.*

(a) The DIP Agent, the First Lien Agent and the Second Lien Agent are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the DIP Liens and the Adequate Protection Liens granted to them hereunder. Whether or not the DIP Agent, the First Lien Agent or the Second Lien Agent shall, in their respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the DIP Liens and the Adequate Protection Liens, such DIP Liens and the Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order.

509600-0296-11873-12047188

(b)     A certified copy of this Order may, in the discretion of the DIP Agent, the First Lien Agent and the Second Lien Agent, as the case may be, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

(c)     The Debtors shall execute and deliver to the DIP Agent, the First Lien Agent, and the Second Lien Agent, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Agent, the First Lien Agent or the Second Lien Agent, as the case may be, may reasonably request to evidence, confirm, validate or perfect the DIP Liens and the Adequate Protection Liens.

(d)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other DIP Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code, and any such provision shall have no force and effect with respect to the granting of the DIP Liens or the Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in favor of the DIP Lenders, the First Lien Lenders or the Second Lien Lenders in accordance with the terms of the DIP Documents or this Order.

20.     *Preservation of Rights Granted Under the Order*.

(a)     No claim or lien having a priority senior to or *pari passu* with those granted by this Order to the DIP Agent, the First Lien Agent or, subject to the terms of the

Intercreditor Agreement, the Second Lien Agent shall be granted or allowed while any portion of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and the DIP Liens and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or, except as set forth in the Intercreditor Agreement, subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)      Unless all DIP Obligations and First Lien Adequate Protection Obligations shall have been indefeasibly paid in full in cash, in the case of clause (i) below, the Debtors shall not seek, and in the case clauses (i) and (ii) below, it shall constitute an Event of Default under the DIP Agreement and a termination of the right to use the Cash Collateral if any of the Debtors seeks, or if there is entered, (i) any modification of this Order without the prior written consent of the DIP Agent (acting with the consent of the Required DIP Lenders) and the First Lien Agent (acting with the consent of the Required First Lien Lenders), as applicable, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or the First Lien Agent, or (ii) an order converting or dismissing any of the Cases.

(c)      If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall, to the extent provided in section 364(e) of the Bankruptcy Code, not affect (i) the validity, priority or enforceability of any DIP Obligations or the Adequate Protection Obligations incurred prior to the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens. Notwithstanding any such reversal, stay, modification or vacatur, any use of the Cash Collateral, any DIP Obligations or

28

any Adequate Protection Obligations incurred by the Debtors to the DIP Agent, the DIP Lenders, the First Lien Agent, the First Lien Lenders, the Second Lien Agent and the Second Lien Lenders, as the case may be, prior to the effective date of such reversal, stay, modification or vacatur shall, to the extent provided in section 364(e) of the Bankruptcy Code, be governed in all respects by the original provisions of this Order, and the DIP Agent, the DIP Lenders, the First Lien Agent, the First Lien Lenders, the Second Lien Agent and the Second Lien Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order, the DIP Documents (with respect to all DIP Obligations), the Adequate Protection Obligations and uses of the Cash Collateral.

(d)     Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Liens, the 507(b) Claims and all other rights and remedies of the DIP Agent, the DIP Lenders, the First Lien Agent, the First Lien Lenders, the Second Lien Agent and the Second Lien Lenders granted by this Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the DIP Obligations, the Adequate Protection Obligations, the Superpriority Claims, the Section 507(b) Claims, the other administrative claims granted pursuant to this Order, and all other rights and

remedies of the DIP Agent, the DIP Lenders, the First Lien Agent, the First Lien Lenders, the

Second Lien Agent and the Second Lien Lenders granted by this Order and the DIP Documents

shall continue in full force and effect until all DIP Obligations are indefeasibly paid in full in

cash and all Adequate Protection Obligations are indefeasibly paid in full in cash or otherwise

satisfied in accordance with paragraph 16(b) or 18(b), as applicable.

21. *Effect of Stipulations on Third Parties.* The stipulations and admissions contained

in this Order, including without limitation, in paragraphs 4 and 14 of this Order, shall be binding

upon the Debtors under all circumstances. The stipulations and admissions contained in this

Order, including without limitation, in paragraphs 4 and 14 of this Order, shall be binding upon

all parties in interest unless (a) any party-in-interest (including the Committee) with standing to

do so has timely filed an adversary proceeding or contested matter (subject to the limitations

contained herein, including without limitation, in this paragraph 21) by no later than the earlier

of (x) the date that is 75 days after the Petition Date and (y) the date that is 60 days following the

formation of the Committee; provided that any such deadline is subject to extension as may be

specified by this Court for cause shown, (i) challenging the validity, enforceability, priority or

extent of (A) the LIFO Obligations or the liens on Prepetition Collateral securing the LIFO

Obligations, (B) the First Lien Obligations or the liens on the Prepetition Collateral securing the

First Lien Obligations or (C) the Second Lien Obligations or the liens on Prepetition Collateral

securing the Second Lien Obligations or (ii) otherwise asserting or prosecuting any Avoidance

Actions or any other claims, counterclaims or causes of action, objections, contests or defenses

(collectively, the "Claims and Defenses") against any of the LIFO Lenders, the First Lien Agent,

any of the First Lien Lenders, the Second Lien Agent or any of the Second Lien Lenders, or their

respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors

509600-0296-11873-12047188

in connection with any matter related to the LIFO Obligations, the First Lien Obligations, the Second Lien Obligations or the Prepetition Collateral and (b) an order is entered and becomes final in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter; provided that, as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date. If no such adversary proceeding or contested matter is timely filed in respect of the LIFO Obligations, the First Lien Obligations and the Second Lien Obligations, as the case may be, (x) the LIFO Obligations, the First Lien Obligations and the Second Lien Obligations, as the case may be, shall constitute allowed claims, not subject to counterclaim, setoff (other than any setoff rights under any hedge agreements in accordance with their terms), subordination (except with respect to the Second Lien Obligations, as set forth in the Intercreditor Agreement), recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case, (y) the liens on the Prepetition Collateral securing the LIFO Obligations, the First Lien Obligations and the Second Lien Obligations, as the case may be, shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraphs 4(b), 4(d) and 4(f), as applicable, not subject to defense, counterclaim, recharacterization, subordination (except with respect to the Second Lien Obligations, as set forth in the Intercreditor Agreement) or avoidance and (z) the LIFO Obligations, the LIFO Lenders, the First Lien Obligations, the First Lien Agent, the First Lien Lenders, the Second Lien Obligations, the Second Lien Agent and the Second Lien Lenders, as the case may be, and the liens on the Prepetition Collateral granted to secure the LIFO Obligations, the First Lien Obligations and the Second Lien Obligations, as the case may be, shall not be subject to any other or further challenge by any party-in-interest (including the Committee), and such party-in-interest shall be

509600-0296-11873-12047188

enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors). If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraphs 4 and 14 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on all parties-in-interest (including the Committee), except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding or contested matter.

22. *Limitation on Use of DIP Loans and DIP Collateral.* The Debtors shall use the DIP Loans and the Prepetition Collateral (including the Cash Collateral) solely as provided in this Order, the Budget and the DIP Documents. Notwithstanding anything herein or in any other order of this Court to the contrary, no DIP Loans, no DIP Collateral, no Prepetition Collateral (including the Cash Collateral) nor the Carve-Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, the First Lien Documents, the Second Lien Documents or the liens or claims granted under this Order, the DIP Documents, First Lien Documents or the Second Lien Documents, (b) assert any Claims and Defenses or any other causes of action against the DIP Agent, the DIP Lenders, the LIFO Lenders, the First Lien Agent, the First Lien Lenders, the Second Lien Agent, the Second Lien Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's, the First Lien Agent's or the Second Lien Agent's assertion, enforcement or realization on the Prepetition Collateral or the DIP Collateral in accordance with the DIP Documents, the First Lien Documents, the Second Lien Documents or this Order, (d) seek to

modify any of the rights granted to the DIP Agent, the DIP Lenders, the LIFO Lenders, the First Lien Agent, the First Lien Lenders, the Second Lien Agent or the Second Lien Lenders hereunder or under the DIP Documents, the First Lien Documents or the Second Lien Documents, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) permitted under the DIP Documents; provided that, notwithstanding anything to the contrary herein, no more than an aggregate of $50,000 of the Prepetition Collateral (including the Cash Collateral), the DIP Loans, the DIP Collateral or the Carve-Out may be used by the Committee to investigate the validity, enforceability or priority of the LIFO Obligations, the First Lien Obligations, the Second Lien Obligations or the liens on the Prepetition Collateral securing the LIFO Obligations, the First Lien Obligations or the Second Lien Obligations, or investigate any Claims and Defenses or other causes action against the LIFO Lenders, the First Lien Agent, the First Lien Lenders, the Second Lien Agent and the Second Lien Lenders.

23. *Insurance.* To the extent the First Lien Agent is listed as loss payee under the Debtors' insurance policies, the DIP Agent is also deemed to be the loss payee under the Debtors' insurance policies and shall act in that capacity and subject to the terms of the DIP Documents, distribute any proceeds recovered or received in respect of any such insurance policies, first, to the payment in full of the DIP Obligations, and second, to the payment of the First Lien Obligations.

24. *Master Proof of Claim.*

(a) To facilitate the processing of claims, to ease the burden upon this Court and to reduce any unnecessary expense to the Debtors' estates, (i) the First Lien Agent is

authorized to file a single master proof of claim in the Case of Oriental Trading Company, Inc. on behalf of itself and the First Lien Lenders on account of their claims arising under the First Lien Documents and hereunder against all Debtors (other than OTC Holdings Corporation ("Holdings")) and (ii) the Second Lien Agent is authorized to file a single master proof of claim in the Case of Oriental Trading Company, Inc. on behalf of itself and the Second Lien Lenders on account of their claims arising under the Second Lien Documents and hereunder against all Debtors (other than Holdings) (each, a "Master Proof of Claim"), and neither the First Lien Agent nor the Second Lien Agent shall, solely as a result of filing a Master Proof of Claim, be required to file a verified statement pursuant to Bankruptcy Rule 2019 in any of the Cases.

(b)     Upon filing of the applicable Master Proof of Claim against Oriental Trading Company, Inc., the First Lien Agent and each First Lien Lender, and the Second Lien Agent and each Second Lien Lender, as the case may be, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors (other than Holdings) arising under the First Lien Documents or the Second Lien Documents, as the case may be, or under this Order and the claims of the First Lien Agent and each First Lien Lender, and the Second Lien Agent and each Second Lien Lender, as the case may be (and each of their respective successors and assigns), named in the applicable Master Proof of Claim shall be allowed or disallowed as if each such entity had filed a separate proof of claim in each of the Cases (other than that of Holdings) in the amount set forth in the applicable Master Proof of Claim; provided that each of the First Lien Agent and the Second Lien Agent, may, but shall not be required to, amend the applicable Master Proof of Claim from time to time to, among other things, reflect a change in

34

the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of any such claims.

(c) The provisions set forth in paragraphs (a) and (b) above and the Master Proofs of Claim are intended solely for the purpose of administrative convenience and, except to the extent set forth herein or therein, neither the provisions of this paragraph nor the Master Proofs of Claim shall affect the substantive rights of the Debtors, the First Lien Agent, the First Lien Lenders, the Second Lien Agent, the Second Lien Lenders, or any other party in interest or their respective successors in interest, including without limitation, the right of each First Lien Lender and each Second Lien Lender, as the case may be (or its successor in interest), to vote separately on any plan of reorganization proposed in the Cases.

25. *Order Governs.* In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

26. *Binding Effect; Successors and Assigns.* The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties-in-interest in the Cases, including without limitation, the DIP Agent, the DIP Lenders, the First Lien Agent, the First Lien Lenders, the Second Lien Agent, the Second Lien Lenders, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an examiner with expanded powers appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the First Lien Agent, the First Lien Lenders, the Second Lien Agent, the Second Lien Lenders and the Debtors and their respective successors and assigns; <u>provided</u> that, except to the extent expressly set forth in

this Order, the DIP Agent, the First Lien Agent, the DIP Lenders and the First Lien Lenders shall have no obligation to permit the use of the DIP Loans or the Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

27. *Limitation of Liability.* In determining to make any loan under the DIP Agreement, permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the DIP Agent, the First Lien Agent, the Second Lien Agent, the DIP Lenders, the First Lien Lenders and the Second Lien Lenders shall, subject to and effective upon entry of the Final Order, not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, the First Lien Agent, the First Lien Lenders, the Second Lien Agent or the Second Lien Lenders of any liability for any claims arising from the pre-petition or post-petition activities of any of the Debtors.

28. *Intercreditor Agreement.* Nothing in this Order shall amend or otherwise modify the terms or enforceability of the Intercreditor Agreement, including without limitation, the turnover provisions contained therein, and the Intercreditor Agreement shall remain in full force and effect. The rights of the First Lien Lenders and the Second Lien Lenders shall at all times remain subject to the Intercreditor Agreement.

509600-0296-11873-12047188

29.    *Effectiveness.*  This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of effectiveness of this Order.

30.    *Final Hearing.*  The Final Hearing is scheduled for September 20, 2010 at *11:00* *a*.m., prevailing Eastern time, before this Court.

31.    *Final Hearing Notice.*  The Debtors shall promptly serve copies of this Order (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to the Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) Debevoise & Plimpton LLP, 919 Third Avenue, New York, NY 10022, Attention: Richard F. Hahn, Esq. and My Chi To, Esq., attorneys for the Debtors, (b) Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, Delaware 19899, Attention: Joel A. Waite, Esq., attorneys for the Debtors, (c) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attention: Steven Fuhrman, Esq. and Elisha Graff, Esq., attorneys for the DIP Agent and the First Lien Agent, (d) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attention: Mark D. Collins, Esq., attorneys for the DIP Agent and the First Lien Agent, (e) Kramer Levin Naftalis & Frankel LLP, Attention: Thomas Moers Mayer, Esq., attorneys for the Second Lien Agent, (f) counsel to the Committee and (g) the Office of the U.S. Trustee for the District of Delaware, and shall be filed with the Clerk of

the Bankruptcy Court, in each case to allow actual receipt by the foregoing no later than

September _13_ 2010 at _4:00_ _p_.m., prevailing Eastern time.

Dated: August _26_ 2010
Wilmington, Delaware

THE HONORABLE BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE

509600-0296-11873-12047188